UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA HENDRIX,

              Plaintiff(s),

     v.

SEATTLE HOUSING AUTHORITY, et al.,

              Defendant(s).

NO. C07-657MJP

ORDER ON MOTION FOR
PRELIMINARY INJUNCTION

The above-entitled Court, having received and reviewed:

1.      Emergency Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 3)

2.      Response by Defendant Seattle Housing Authority (Dkt. No. 8)

3.      Plaintiff's Reply (Dkt. No. 9)

all exhibits and declarations attached thereto, and having heard oral argument on the matter, makes the

following ruling:

IT IS ORDERED that Defendant is ENJOINED from undertaking further proceedings against

Plaintiff to terminate her Section 8 benefits pending resolution of her current lawsuit.

IT IS FURTHER ORDERED that Plaintiff's motion to preliminarily enjoin Defendant from

conducting all pre-termination "informal hearings" in accordance with their current procedures is

DENIED.

**Background**

Plaintiff has been notified by the Seattle Housing Authority ("SHA") of that agency's intent to

terminate her rights to federally-funded low-income housing assistance under the program known as

"Section 8." See 42 U.S.C. § 1437(f), 24 C.F.R. 5.100. The program is implemented and overseen at

1   the national level by the U.S. Department of Housing and Urban Development ("HUD").  With a

2   Section 8 housing voucher, a family receives a monthly rental subsidy which the local Public Housing

3   Authority pays directly to the recipient's landlord.  SHA is the locally-authorized Public Housing

4   Authority ("PHA") which administers the Section 8 housing subsidy program.  In accepting federal

5   funds, SHA has obligated itself to conduct its Section 8 program in conformity with HUD regulations.

6   See 24 C.F.R. 982.52(a).

7           Once an applicant has qualified and been awarded a Section 8 voucher, that person must

8   conform to a variety of regulations – called "family obligations," see 24 C.F.R. 982.551 – including

9   reporting any changes in family size and income (and recertifying that data annually).  Failure to

10  observe any of these regulations is grounds for termination from the program. See 24 C.F.R. 982.552,

11  553.  Plaintiff is the target of a potential termination based on allegations that she has failed to provide

12  required information and has consistently misrepresented the facts concerning her family size and

13  income.  Pltf. Exh. 3.  SHA has notified her of its intention to terminate her Section 8 benefits and she

14  has requested a hearing to challenge that determination.  That hearing was scheduled for May 11,

15  2007.  Pltf. Exh. 4.  The parties have stipulated to stay that hearing pending a ruling on this motion, so

16  the status of Plaintiff's Section 8 benefits is undetermined at this point.  Dkt. No. 6.

17          The HUD regulations contain certain procedural requirements attendant upon the decision to

18  terminate Section 8 benefits: advance written notice to the participant; discovery of evidence upon

19  which the termination is based; the right to an "informal hearing" upon request at which  participants

20  may be represented by counsel (at their own expense), present evidence and cross-examine adverse

21  witnesses; and the right to a written ruling on the appeal containing the hearing officer's findings and

22  reasons therefor.  24 C.F.R. 982.555.  As required, SHA has codified these regulations in a "Housing

23  Choice Voucher Administrative Plan;" see Chapter 20, "Complaints and Appeals," Pltf. Exh. 11.

24

25

26  **ORDER ON MTN**
    **FOR PRELIM INJ - 2**

By a "Verified Application for Writ of Prohibition" filed in state court, Plaintiff challenged the legality of the SHA's administrative hearing procedures. Dkt. No. 1, Exh. 1, p. 14. As an alternative to her request for a writ of prohibition, Plaintiff requested that her action be treated as one for declaratory judgment and permanent injunction pursuant to RCW 7.24 et seq. (Uniform Declaratory Judgments Act) and RCW 7.40 et seq. (Injunctions). Id., ¶ 43. Defendant removed the action to this court (Dkt. No. 1), and Plaintiff has moved to preliminarily enjoin the agency from proceeding with their informal Section 8 hearings pending a determination of the procedures' compliance with federal regulations and due process.

**Standard of proof for injunctive relief**

Federal district courts are authorized to issue preliminary injunctions pursuant to FRCP 65(a). A grant of preliminary injunctive relief should issue when the moving party has demonstrated either a likelihood of "probable success on the merits and irreparable injury," or else has raised "serious questions" regarding the merits of the case and further shown that the "balance of hardships tips sharply in [her] favor." Ranchers Cattlemen Action Legal Fund v. U.S. Dept. of Agriculture, 415 F.3d 1078, 1092 (9th Cir. 2005). These are not separate and distinct analyses, but are rather viewed as a continuum upon which "the required degree of irreparable harm increases as the probably of success decreases." Id.

**Discussion**

I.      Likelihood of success on the merits/serious questions raised

A.      *Writ of Prohibition/Declaratory Judgment*

Washington's writ of prohibition statute is found at RCW 7.16.290:

> The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings

**ORDER ON MTN**
**FOR PRELIM INJ - 3**

are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

Plaintiff's claims in this matter are not properly brought under this statute; i.e., she will not succeed on the merits of her writ of prohibition claim. SHA is not acting without or in excess of its jurisdiction. As a Public Housing Authority, it is empowered to make decisions regarding the eligibility of applicants and participants for Section 8 benefits through 24 C.F.R. 982.555. The agency has personal jurisdiction over local Section 8 applicants and participants and subject matter jurisdiction over allegations of violations of Section 8 regulations.

Plaintiff does not dispute SHA's authority to make these determinations. Her position is rather that the structure of the SHA "informal hearing" does not comply with HUD regulations; i.e., that Defendant is erroneously applying the existing federal rules to the circumstances of local Section 8 recipients. She does not appear to allege that the SHA rules themselves (as recorded in Chapter 20 of the Housing Choice Voucher Administrative Plan) are violative of the federal mandates; what she asserts is that the SHA's *practices* in conducting the informal pre-termination hearings (their unofficial policies in implementing their rules) are improper.

However, a writ of prohibition is not warranted where an agency "is about to abuse its discretion or commit error; it must be acting without or in excess of its jurisdiction." Alaska Airlines v. Molitor, 43 Wn.2d 657, 664 (1953); see also Brower v. Charles, 82 Wn.App. 53, 59 (1996) ("A statutory writ of prohibition. . . is not a proper remedy. . . where the only allegation is that the actor is exercising jurisdiction in an erroneous manner." [*citation omitted*]). Because she has not shown that SHA is acting outside its authority, Plaintiff's likelihood of success in obtaining a writ of prohibition is nil.

Plaintiff has brought her action in the alternative, and it appears that RCW 7.24 et seq. ("Uniform Declaratory Judgments Act"), which is plead at ¶ 43 of her state court application, permits a determination of the issues she has raised:

**ORDER ON MTN**
**FOR PRELIM INJ - 4**

> A person. . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the. . . statute [or] ordinance. . . and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020.

Although Defendant maintained at oral argument that Plaintiff must exhaust her administrative remedies (i.e., proceed through an informal hearing and receive a final decision) in order to qualify for a declaratory judgment, that argument is nowhere present in their responsive briefing and no statutory or case authority has been cited for that position. There has historically been a requirement for a "justiciable controversy" upon which to render a declaratory judgment; i.e., a truly adversarial proceeding involving "present and actual, as distinguished from possible or potential, controversy between parties." DeGrief v. City of Seattle, 50 Wn.2d 1, 13 (1956). It is equally well-established, however, that a party who presents an issue of broad and overriding public import can thereby satisfy the justiciable controversy element even in the absence of a "present and actual" controversy. See Northwest Greyhound Kennel Ass'n, Inc. v. State of Washington, 8 Wn.App. 314 (1973); Port of Seattle v. Washington Utilities and Transport Comm'n, 92 Wn.2d 789 (1979).

It has yet to be determined whether Plaintiff will actually suffer termination of her Section 8 benefits as a result of the procedure which she challenges, and to that extent she cannot be said to have presented an "actual and present" controversy. Nevertheless, the Court finds that her allegations concerning the deficiencies in a system which affects something as fundamental as a place to live for thousands of low-income families creates a justiciable controversy by virtue of presenting an issue of broad and overriding public import.

B.    *SHA Policies and Practices*

The courts have recognized for decades that the rights of qualified welfare and low-income individuals to assistance are entitled to due process protections. The seminal case in this regard is Goldberg v. Kelly, 397 U.S. 254 (1970), which held that recipients of Aid to Families with Dependent

**ORDER ON MTN**
**FOR PRELIM INJ - 5**

1   Children ("AFDC") were denied due process where the controlling agency only offered a hearing to

2   contest revocation of benefits <u>after</u> the benefits had been terminated.  "[W]e hold that due process

3   requires an adequate hearing before termination of welfare benefits, and the fact that there is a later

4   constitutionally fair proceeding does not alter that result."  <u>Id.</u> at 261.

5        <u>Goldberg</u> cited a number of elements in a pre-termination hearing necessary to satisfy the

6   minimum requirements of due process.  "The hearing must be 'at a meaningful time and in a

7   meaningful manner'" [*citation omitted*] and the recipient must "have timely and adequate notice

8   detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting

9   any adverse witnesses and by presenting his own arguments and evidence orally."  <u>Id.</u> at 267-68.

10  "[T]he recipient must be allowed to retain an attorney if he so desires."  <u>Id.</u> at 270.  "Finally, the

11  decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and

12  evidence adduced at the hearing. . . [and] the decision maker should state the reasons for his

13  determination and indicate the evidence he relied on. . . . And, of course an impartial decision maker is

14  essential."  <u>Id.</u> at 271.

15       It is important to keep in mind that the *pre*-termination "informal hearing," standing alone, was

16  not considered adequate due process for the AFDC recipients in <u>Goldberg</u>.  When the Supreme Court

17  held that "the pre-termination hearing need not take the form of a judicial or quasi-judicial trial," the

18  Court was willing to forego a more elaborate "judicial or quasi-judicial" proceeding because "the

19  statutory 'fair hearing' will provide the recipient with a full administrative review."  <u>Id.</u> at 266-67.  The

20  "statutory 'fair hearing'" to which the opinion refers was the post-termination proceeding "before an

21  independent state hearing officer at which the recipient may appear personally, offer oral evidence,

22  confront and cross–examine witnesses against him and have a record made of the hearing."  <u>Id.</u> at 259-

23  60.

24

25

26  **ORDER ON MTN**
    **FOR PRELIM INJ - 6**

A close reading of the opinion discloses that the Supreme Court was ultimately unconcerned with whether there were two hearings (a pre- and a post-termination proceeding) as long as a recipient of benefits targeted for termination was afforded adequate due process prior to termination and complete due process by the conclusion of the administrative procedure.  There was nothing magical about a two-part process, but if there was only to be a single process, it must provide full due process <u>prior</u> to the termination of benefits.  In a crucial footnote, Justice Brennan observed that "[d]ue process does not, of course, require two hearings.  If, for example, a State simply wishes to continue benefits until after a 'fair' hearing there will be no need for a preliminary hearing."  <u>Id.</u> at 267, fn. 14.[1]

It is against this backdrop that the HUD regulations must be viewed. The regulations currently in place concerning Section 8 benefits and their termination – 24 C.F.R. 982.516 et seq. (Def. Exh. A) – were clearly informed by the principles and recommended practices contained in <u>Goldberg</u>.  In summary, HUD requires the following procedures upon determination by a PHA that a recipient's Section 8 benefits should be terminated:

- The PHA must notify the family in writing; if they do not agree with the decision, they may request an "informal hearing" challenging the decision.

- The written notification must contain a "brief statement of reasons," and advise the family of their right to an informal hearing and the deadline by which that hearing must be requested.

- The family must be given the chance to examine any documents the PHA intends to rely upon at the hearing.

- The family may be represented by counsel at the hearing, at its own expense.

---

[1] The Court agrees with the lecturing federal judge who observed "<u>Goldberg v. Kelly</u> is the lodestar in this area, but it sheds an uncertain light.  After the usual litany that the required hearing 'need not take the form of a judicial or quasi-judicial trial,' Mr. Justice Brennan proceeded to demand almost all the elements of one."  Judge Henry J. Friendly, "Some Kind of Hearing," 123 U.Pa. L. Rev. 1267, 1299 (1975) (citations omitted).
   A review of the administrative plan at issue in <u>Goldberg</u> – found at HEW Handbook of Public Assistance Administration, Pt. IV, §§ 6200-6400 (February 1968) – reveals that the post-termination "fair hearing" alluded to by the Supreme Court contained the added elements of a "verbatim transcript. . . or official report containing the substance of what transpired at the hearing" as well as the right of the challenging recipient "to advance any arguments without undue interference."  HEW Handbook, § 6200(i)(5) and (l).

**ORDER ON MTN**
**FOR PRELIM INJ - 7**

- The hearing officer shall be "any person or persons designed by the PHA," except the person who made the original termination decision or who is a subordinate of the person who made the decision.

- At the hearing, both the PHA and the family must be given the opportunity to present evidence and cross-examine any adverse witnesses. The rules of evidence applicable in judicial proceedings do not apply at these informal hearings.

- The hearing officer is required to issue a written ruling which states the reasons for the decision, and a copy must be promptly provided to the family. All factual determinations are to be made on a "preponderance of the evidence" standard.

24 C.F.R. 982.555.

As they are required to do, Defendant SHA has adopted its own "Informal Hearing Procedures for Participants" which are found at Chapter 20.C of the Housing Choice Voucher Administrative Plan (November 2003)( Pltf. Exh. 11). Those procedures may be summarized as follows:

- A written notification of the decision must be provided to the Section 8 participants; the notice must include (1) the proposed action, (2) the date the proposed action will occur, (3) the participant's right to an explanation of the reasons for the action, (4) the procedure for requesting a hearing to dispute the proposed action, (5) the deadline for requesting the hearing and (6) the name of the person to whom the request must be addressed.

- If requested, a copy of the SHA hearing procedures shall be provided to the family.

- Upon request, a hearing must be scheduled within 30 days. A hearing notification must be provided to the family which includes (1) the date and time of the hearing, (2) the location of the hearing, (3) the participant's right to present evidence and witnesses, bring translators and be represented by counsel (at participant's expense), (4) the participant's right to review any evidence upon which SHA relied and (at the family's expense) to obtain copies of those documents, (5) the SHA's right to review any evidence upon which the family intends to rely at the hearing.

- Participant rights at the hearing include the right to (1) object orally or in writing to the SHA's decision, (2) examine all documents relied on by SHA and/or presented to the hearing officer, (3) present evidence and/or witnesses on "any pertinent issues," (4) have SHA staff present (or available) to answer questions regarding the decision, and (5) be represented (at their own expense) by counsel or "other designated advocate."

- The hearing may be conducted by an SHA-appointed hearing officer who is not the person who made the adverse decision nor a subordinate of that person.

ORDER ON MTN
FOR PRELIM INJ - 8

- Evidence shall be considered at the hearing without regard to the rules of admissibility governing evidence at a judicial proceeding; "[o]nly the issues subject to appeal and raised by the participant in their notice of appeal shall be addressed."

- Only documents provided to the other party prior to the hearing may be offered into evidence.

- An audio recording of the hearing may be made if requested by the participant at least one business day prior to the hearing.

- Factual determinations relating to the circumstances of the family and the propriety of the decision will be made according to a "preponderance of the evidence" standard, and the hearing officer is responsible for determining whether the proposed action is "consistent with HUD regulations and this Administrative Plan based upon the evidence and testimony provided at the hearing."

- The hearing officer is responsible for issuing a written decision within 10 business days of the hearing which must include (1) a statement of the findings, conclusions and decision; (2) a summary of the decision and explanation of the reasons therefor; (3) a statement of moneys owed (if relevant) and the calculations which produced that figure; and (4) the date upon which the decision becomes effective.

Pltf. Exh. 11, pp. 68-70.

Defendant's position in this litigation is unequivocal: it asserts that the HUD "informal hearing" requirements (and, by extension, SHA's administrative plan) "contain each of Goldberg's pre-termination provisions and nothing at all related to the full administrative hearings discussed in Goldberg." Def. Memo, p. 12. Plaintiff, on the other hand, contends that the HUD regulations "consolidated all of the Goldberg due process standards into a single 'informal hearing,' a family's one and only hearing at which to contest termination from the Section 8 program." Pltf. Mtn., p. 13. In other words, the pre-termination "informal hearing" and the post-termination "fair hearing" or "full administrative review" discussed in Goldberg are, in Plaintiff's eyes, rolled up into a single pre-termination proceeding in the HUD regulations (as was suggested by Justice Brennan's footnote *supra*).

Without making any finding regarding Plaintiff's likelihood of success on the merits, the Court does find that Plaintiff has succeeded in raising "serious questions" about the merits of her claim.

**ORDER ON MTN**
**FOR PRELIM INJ - 9**

Specifically, the questions raised are: if SHA is correct that the HUD regulations do nothing more than embody the pre-termination hearing requirements of <u>Goldberg</u>, has the federal agency (and thus, the defendant local agency) fallen short of providing the level of due process contemplated by the Supreme Court in that landmark opinion?  And, if Plaintiff is correct that HUD intended to incorporate the full range of due process into the single pre-termination hearing, do the SHA procedures succeed in implementing the "full administrative review" required by the <u>Goldberg</u> court?

The Court finds that, as written, the SHA procedures are an accurate re-creation of the process contained in the HUD regulations.  Plaintiff has not pointed to a single instance of a HUD pre-termination requirement that is not reflected in the written SHA procedures.

But Plaintiff complains that, in practice, the manner in which SHA conducts its informal hearings represents an impermissible departure from the requirements of the HUD regulations and <u>Goldberg</u>.  In her responsive briefing, Plaintiff lists the main three informal hearing practices that she challenges:

1.      That hearing officers routinely uphold termination decisions based on a "sufficient evidence" standard of proof which fails to actually adjudicate material factual disputes.

2.      That "SHA hearing officers must uphold an SHA termination decision if SHA establishes the (prima facie) factual basis of the decision."  The SHA hearing officers are not permitted to entertain affirmative defenses or other legal arguments, nor are they empowered to impose lesser sanctions than termination if circumstances warrant.

3.      That SHA's hearing officers have neither the training nor the experience to evaluate legal arguments, apply the law to the facts and to "properly" adjudicate factual disputes.

Pltf. Reply, pp. 3-4.

Plaintiff bases her allegation that SHA has abandoned the "preponderance of the evidence" standard on legal memoranda filed by Defendant in state court litigation.  Pltf. Exh's 5-7.  Setting aside

**ORDER ON MTN**
**FOR PRELIM INJ - 10**

1   Plaintiff's failure to cite any statutory or case authority that legal pleadings can somehow supplant

2   agency regulation as official policy, a reading of the documentary evidence makes it clear that defense

3   counsel's use of the phrase "sufficient evidence" was not intended to proclaim a standard of proof

4   lower than the required "preponderance of the evidence."  Pltf. Exh. 6, pp. 4-5.

5          SHA does not deny that its hearing officers (who are agency staff members) "are unfamiliar

6   with the law, lack the legal training and have no access to statutes, cases or other legal resources."

7   Def. Memo, pp. 16-17.  But, as Defendant correctly points out, the regulations do not require that the

8   hearing officers possess those qualifications.  "The hearing may be conducted by any person or persons

9   designated by the PHA, other than a person who made or approved the decision under review or a

10  subordinate of this person."  24 C.F.R. 982.555(e)(4)(i).  As indicated in comments prepared by HUD

11  prior to adopting these regulations, under this rule "the PHA may designate 'any person or persons,'

12  *including a PHA employee or officer*, or an outside person."  49 Fed. Reg. 62, 12229. (emphasis

13  supplied.)        And nowhere in the HUD regulations does it indicate that hearing officers are

14  authorized to do anything other than rule on the correctness or incorrectness of the decision to

15  terminate benefits; the Court finds the fact that the SHA hearing officers are not empowered to issue

16  "lesser sanctions" to be of no significance.

17         Although the Court does not find that Plaintiff's likelihood of success in challenging the SHA

18  practices as violative of the HUD regulations is high, the Court does finds that Plaintiff has raised

19  "serious questions" concerning whether the HUD regulations and the SHA procedures which are

20  modeled after them have been issued in conformity with the constitutional requirements enunciated in

21  Goldberg.  If, as Defendant maintains, HUD intended only to grant Section 8 participants the right to

22  an informal pre-termination hearing without the "full administrative review" cited in Goldberg, has the

23  agency (and, by association, SHA) failed to accord Section 8 participants the full measure of due

24  process contemplated by the Constitution and the Supreme Court?  By what legal calculus has it been

25

26  **ORDER ON MTN**
    **FOR PRELIM INJ - 11**

1    determined that recipients of federal housing assistance are entitled to less procedural protection than

2    the recipients of Aid to Families with Dependent Children in Goldberg?

3            It may be that all the necessary parties are not joined in this action to permit a proper

4    determination of this possible controversy.  But the question is serious enough that the Court is not

5    prepared to permit the SHA system to continue to process Plaintiff through to possible termination

6    before some further development of the issue.

7    II.    Irreparable injury/balance of hardships

8            The Court next turns to an examination of whether Plaintiff has demonstrated the danger of any

9    irreparable injuries or whether the balance of hardships tips in favor of one side or the other.

10           The Court has no difficulty in making a finding of the possibility of irreparable injury if Plaintiff

11   is unconstitutionally deprived of her benefits under Section 8.  The rationale of the Goldberg court –

12   "that termination of aid pending resolution of a controversy over eligibility may deprive an eligible

13   recipient of the very means by which to live while he waits," 397 U.S. at 264 – is equally applicable

14   here.  The injury at risk here – loss of a place to live – is not an injury that can be redressed by

15   monetary damages after the fact.

16           By the same token, the balance of hardships tips in Plaintiff's favor.  The hardship to her in the

17   event that her Section 8 benefits are wrongfully terminated is greater than that to SHA should it be

18   forced to unnecessarily continue her as a recipient of the program for a period of time.  However, the

19   Court is not inclined to grant Plaintiff the full relief she requests – that of enjoining the entire SHA pre-

20   termination hearing process while this issue is adjudicated.  Plaintiff has not filed a class action nor in

21   any fashion contended that she is acting as the representative of a large number of similarly-situated

22   individuals.  The balance of hardships tips clearly in Defendant's favor when contemplating shutting

23   down the entire system under which they regulate compliance with this critical and costly program.

24

25

26   **ORDER ON MTN**
     **FOR PRELIM INJ - 12**

1    Neither the seriousness of the questions raised nor the likelihood of success on the merits are sufficient

2    to counterbalance that hardship.

3

4    **Conclusion**

5          While the Court does not find that Plaintiff has demonstrated a likelihood of success on the

6    merits of her  claims at this point, Plaintiff has raised a serious question concerning whether the HUD

7    regulations and SHA procedures are constitutionally adequate in providing Section 8 participants facing

8    termination the requisite degree of due process.  Plaintiff stands to be irreparably injured if she is

9    unconstitutionally deprived of her federal housing assistance and the balance of hardships tips

10   individually in her favor when measured against the hardship to SHA of continuing to refrain from

11   terminating her.  That scale does not tip in Plaintiff's favor, however, when weighed against her request

12   to enjoin the <u>entire</u> SHA bureaucracy from processing proposed terminations in accordance with their

13   current procedures.

14         Until the final resolution of Plaintiff's pending litigation, the Court preliminarily enjoins

15   Defendant SHA from proceeding with the "informal hearing" to determine whether Plaintiff's Section 8

16   benefits will be terminated.

17

18         The clerk is directed to provide copies of this order to all counsel of record.

19         Dated:  September _25_, 2007

20

21

22         Marsha J. Pechman
           U.S. District Judge

23

24

25

26   **ORDER ON MTN**
     **FOR PRELIM INJ - 13**