UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA HENDRIX,

              Plaintiff(s),

     v.

SEATTLE HOUSING AUTHORITY, et al.,

              Defendant(s).

NO. C07-657MJP

ORDER ON MOTION TO DISMISS

The above-entitled Court, having received and reviewed:

1.      Motion to Dismiss (Dkt. No. 16)

2.      Plaintiff's Response (Dkt. No. 18)

3.      Defendants' Reply (Dkt. No. 20)

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED; Plaintiff's cause of action for a writ of prohibition is DISMISSED, and the remainder of her action will be permitted to proceed.

### Background

Defendant Seattle Housing Authority ("SHA") is the locally-authorized agency that administers the U.S. Department of Housing and Urban Development's ("HUD") Section 8 housing subsidy program, through which low income persons receive financial assistance in the private rental market. The rental assistance comes in the form of a Housing Voucher paid directly to the landlord – there are currently 8,300 such vouchers available in the Seattle area and the qualification and award process is lengthy and complex. Demand is high; supply is low.

ORD ON MTN
TO DISMISS - 1

1    Once a participant has qualified and been awarded a Section 8 voucher, that person must
2    conform to a variety of regulations, including reporting any changes in family size and income (and
3    recertifying that data annually).  Failure to observe any of these regulations is grounds for termination
4    from the program.  Plaintiff is the target of a potential termination based on allegations that she has
5    failed to provide required information and has consistently misrepresented the facts concerning her
6    family size and income.  The agency has notified her of its intention to terminate her Section 8 benefits
7    and she has requested an informal hearing to challenge that determination.  This Court has previously
8    entered a preliminary injunction at Plaintiff's request to halt further proceedings to terminate her
9    Section 8 entitlement prior to resolution of this litigation.  Dkt. No. 21.

10    The procedure for appealing a preliminary decision to terminate Section 8 benefits is contained
11    in SHA's Housing Choice Voucher Administrative Plan, Chapter 20.  Def. Mtn., Exh. E.  Once SHA
12    has determined that a participant is in violation of the regulations, that person receives a "voucher
13    termination letter" that advises them of the intent to terminate and of their right to an "informal
14    hearing" to contest the determination.  The hearings are informal administrative hearings presided over
15    by a hearing officer (a non-lawyer appointed by SHA) at which both the agency and the participant
16    may present documents and witnesses explaining their positions.  The opposing side is permitted to
17    question all witnesses and challenge any evidence.  Evidentiary rules are not observed and
18    "[a]rguments challenging the legality of the Housing Authority's decision may not be presented."[1]
19    Final determinations are to be made on a "preponderance of the evidence" standard.  Following the
20    proceeding, the hearing officer issues a written decision that outlines the evidence presented and the
21    findings in favor of one side or the other.

22
23
24  _____

25    [1]  Draft version of SHA's "Grievance Hearing Rules and Procedures," p. 14.

26  **ORD ON MTN**
    **TO DISMISS - 2**

Plaintiff's complaint alleges a number of practices of the agency or the hearing officers that she claims are either violations of the HUD regulations upon which SHA's procedures are based, or are simply unconstitutional denials of due process.  Specifically, the practices she challenges are:

1.   Hearing officers upholding termination without deciding factual disputes "material to the outcome." (Complaint, ¶ 33(a));

2.   Hearing officers' decisions based on a "sufficient evidence" standard rather than the "preponderance of evidence" standard called for by the SHA and HUD regulations;

3.   The hearing officers' refusal to consider relevant legal arguments or defenses (Complaint, ¶ 30(c)); and

4.   The use of hearing officers without the "skills, training or background to properly adjudicate factual disputes, interpret and analyze legal arguments or apply the law to the facts in logical written opinions that conform to relevant legal authority." (Complaint, ¶ 32.)

Plaintiff seeks redress under two causes of action: (1) a writ of prohibition pursuant to RCW 7.16.290 or, alternatively, (2) a request for a declaratory judgment (per RCW 7.24 et seq.) and permanent injunction (per RCW 7.40 et seq.).  Defendants request dismissal of both claims pursuant to FRCP 12(b)(6).  For the reasons stated below, the Court grants the request as to the writ of prohibition claim and denies as regards the declaratory/injunctive relief claim.

**Discussion/Analysis**

Timeliness

Plaintiff first attacks Defendants' motion on the grounds that it is untimely and therefore procedurally defective.  Plaintiff notes that, as a dispositive motion, Defendant's request for dismissal falls under Local Rule 7(d)(3) and must "be noted for consideration no earlier than the fourth Friday after filing and service of the motion."  SHA's motion was filed and served on August 9, 2007, and

**ORD ON MTN
TO DISMISS - 3**

1  was noted for consideration on August 28, 2007 (a Tuesday).  According to the local rules, the motion

2  should have noted on August 31, 2007.

3      Plaintiff's procedural argument is ultimately unconvincing.  Had the motion been noted

4  correctly, Plaintiff's response would have been due on the preceding Monday (August 27).  While

5  complaining of insufficient time to prepare a response, Plaintiff did not actually file her response until

6  August 31, four days after it should have been filed.  It is difficult to see, under these circumstances,

7  how Plaintiff was prejudiced by any impropriety in the motion's noting date (that was, in any event,

8  assigned by the Clerk's Office when Defendants failed to provide one with their pleadings).  Plaintiff's

9  request for dismissal on procedural grounds is denied.

10  Writ of prohibition

11      Washington's writ of prohibition statute is found at RCW 7.16.290:

12      The writ of prohibition is the counterpart of the writ of mandate.  It arrests the
        proceedings of any tribunal, corporation, board or person, when such proceedings
13      are without or in excess of the jurisdiction of such tribunal, corporation, board or
        person.

14

15      Plaintiff's claims in this matter are not properly brought under this statute.  SHA is not acting

16  without or in excess of its jurisdiction.  As a Public Housing Authority it is empowered, through     24

17  C.F.R. 982.555, to make decisions regarding the eligibility of applicants and participants for Section 8

18  benefits.  The agency has personal jurisdiction over local Section 8 applicants and participants and

19  subject matter jurisdiction over allegations of violations of Section 8 regulations.

20      Plaintiff does not dispute SHA's authority to make these determinations.  Her position is rather

21  that the structure of the SHA "informal hearing" does not comply with HUD regulations or the

22  requirements of due process; i.e., that Defendant is erroneously applying the existing federal law.  She

23  argues incorrectly that the SHA regulations do not properly reflect the HUD requirements (in fact they

24  are almost identical).  And at the heart of her complaint is the assertion that SHA's *practices* in

25

26  **ORD ON MTN**
    **TO DISMISS - 4**

1    conducting the informal pre-termination hearings – its unofficial policies in implementing its rules – are

2    improper.

3         However, a writ of prohibition is not warranted where an agency "is about to abuse its

4    discretion or commit error; it must be acting without or in excess of its jurisdiction." Alaska Airlines

5    v. Molitor, 43 Wn.2d 657, 664 (1953); see also Brower v. Charles, 82 Wn.App. 53, 59 (1996) ("A

6    statutory writ of prohibition. . . is not a proper remedy. . . where the only allegation is that the actor is

7    exercising jurisdiction in an erroneous manner." [*citation omitted*]).  Because she has not shown that

8    SHA is acting outside its authority, Plaintiff can allege no set of facts under which she would be

9    entitled to a writ of prohibition.  Therefore, that claim will be dismissed.

10   Declaratory judgment/injunction

11        In her complaint, Plaintiff requests that the Court "treat this action as one for a declaratory

12   judgment and permanent injunction," and asks the Court to "restrain Defendant SHA from conducting

13   an informal hearing." (Complaint, ¶¶ 43, 44)  Defendant makes a number of arguments relating to the

14   dismissal of the request for declaratory or injunctive relief.  Some of them are inappropriate to a

15   12(b)(6) motion; none of them are ultimately persuasive as regards this cause of action.

16        SHA asserts an "exhaustion of remedies" argument, citing the rule in Washington that a party

17   cannot seek declaratory and injunctive relief (even when constitutional claims are involved) without

18   first exhausting administrative remedies.  The criteria are found in Ryder v. Port of Seattle, 50

19   Wn.App. 144 (1987):

20        [A]dministrative remedies must be exhausted before the courts will intervene:
          (1) "when a claim is cognizable in the first instance by an agency alone;" (2) when
21        the agency's authority "establishes clearly defined machinery for the submission,
          evaluation and resolution of complaints by aggrieved parties;" and (2) when the
22        "relief sought. . . can be obtained by resort to an exclusive or adequate administrative
          remedy."
23
     Id. at 151 (citations omitted).
24

25

26   **ORD ON MTN**
     **TO DISMISS - 5**

1      This rule is not absolute and has been abrogated, for instance, in cases where it has been found

2  that the claim, while it concerns an area of administrative regulation, is essentially a request for a

3  declaration of legal rights and hence the province of the judiciary.  (See City of Yakima v.

4  International Ass'n of Fire Fighters, 117 Wn.2d 655, 674 (1991)).  In this case, the essence of

5  Plaintiff's claim is the inadequacy of the administrative remedy (i.e., that this administrative remedy is

6  not adequate to afford the relief sought) and the possible violation of her right to due process by the

7  administrative agency in question.  Under those circumstance, the Court finds that exhaustion of an

8  administrative remedy is not a prerequisite to bringing a lawsuit.

9      Defendant maintains at a number of points in its briefing that Plaintiff's claims are

10 "unsupported by any factual allegation" or "unsupported by allegations of any provable facts."  Def

11 Mtn., pp. 7, 8, 12.  This contention might be appropriate to a summary judgment motion, but it is not

12 proper argument under FRCP 12(b)(6).  The Court is to assume that all material allegations are true

13 and construe them in the light most favorable to Plaintiff.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

14 339 (9th Cir. 1996).  All of Plaintiff's claims are accompanied by allegations regarding SHA policies

15 and practices and it is not appropriate at this stage to analyze whether they are "provable." Only if

16 Defendant can establish that "beyond doubt that the [non-moving party] can prove no set of facts in

17 support of his claim which would entitle him to relief" (Vasquez v. L.A. County, 225 F.3d 1246, 1249

18 (9th Cir. 2007), quoting Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001) (emphasis

19 supplied)) is it entitled to a dismissal of the claim.

20     Defendant also challenges Plaintiff's claims on their merit.  Those claims fall into two

21 categories: (1) that the SHA policies and practices do not follow the requirements set out by the HUD

22 regulations; and (2) that, regardless of whether they follow the HUD requirements, the SHA "informal

23 hearing" process is constitutionally defective for its failure to provide due process.

24

25

26 **ORD ON MTN**
   **TO DISMISS - 6**

1   1.      *Failure to follow HUD requirements*

2        Plaintiff maintains that the SHA procedures do not conform to the requirements of the HUD

3   administrative scheme.  But, as Defendant points out, the SHA informal hearing requirements are

4   basically a note-for-note recitation of the procedural guidelines laid out in the HUD regulations.

5   Plaintiff does not cite to one instance where a requirement enumerated in the HUD regulations is not

6   reflected in the SHA procedural framework.  Plaintiff claims that the HUD regulations require a

7   "quasi-judicial proceeding" not provided by the SHA, but the HUD regulations do not call for a

8   proceeding that resembles in any way a trial on the merits.

9        Plaintiff's action survives Defendant's 12(b)(6) motion, however, because of her claims that, *in*

10  *practice*, the SHA hearing officers do not adhere to the HUD/SHA regulations.  Specifically, Plaintiff

11  alleges that the hearing officers base their rulings about whether to uphold termination decisions on a

12  "sufficient evidence" standard that is less rigorous than the "preponderance of the evidence" standard

13  called for by the regulations.  Contrary to SHA's assertions, this allegation does not have to be

14  supported by "provable facts" contained in the complaint.  It is sufficient, for 12(b)(6) purposes, that

15  Plaintiff would have a claim against Defendant if she is able to establish this set of circumstances at

16  trial.  Vasquez, 225 F.3d 1246, 1249.

17       Plaintiff also bases her cause of action on the lack of qualifications of the hearing officers to

18  rule on evidentiary issues or legal arguments at the SHA proceedings.  The hearing officers are SHA

19  staff members with no legal training or expertise beyond the Section 8 regulations themselves.  It is

20  not clear to the Court whether Plaintiff is claiming that this is a violation of the SHA/HUD

21  requirements.  Defendant is correct when it points out that the requirements do not mandate any

22  qualifications for the hearing officers beyond a status condition that they not be the person who made

23  the termination decision or a person who is subordinate to that decision-maker.  As discussed below, it

24

25

26  **ORD ON MTN**
    **TO DISMISS - 7**

1   is possible that this argument carries more weight in the context of a more general constitutional due

2   process issue, but it is ineffective as far as it concerns compliance with the SHA/HUD regulations.

3   2.      _Constitutional/due process argument_

4          Plaintiff alleges that SHA policies and practices violate her due process rights under the

5   Federal Constitution.  The due process rights at issue were definitively enunciated in Goldberg v.

6   Kelly, 397 U.S. 254 (1970), in which the Supreme Court held that the government could not terminate

7   welfare benefits without providing a minimum level of pre-termination due process.  The Supreme

8   Court enumerated what those pre-termination procedural requirements were, and the HUD regulations

9   are a direct reflection of  that portion of the Goldberg holding; i.e., they incorporate all the elements

10  mandated by the Court for a pre-termination process.

11         As discussed at length in the Court's previous order partially granting injunctive relief to

12  Plaintiff, Goldberg does not hold that due process is satisfied by a pre-termination "informal hearing"

13  alone.  Instead, Goldberg clearly contemplates a "full administrative review" which affords greater

14  procedural rights, rights akin to the "quasi-judicial proceeding" that Plaintiff seeks here.  Id. at 266.

15  The opinion takes two different, but not mutually-exclusive, positions regarding the target recipient's

16  rights: (1) as long as the broader, "full administrative review" is offered post-termination, a pre-

17  termination hearing need only contain the elements outlined in the opinion[2]; and (2) it is permissible to

18  roll all of these procedural requirements (the pre-termination rights and the "full administrative

19

20  _____

21      [2]     Those elements are:
            1.      Timely and adequate notice of the proposed termination and the reasons therefor
            2.      The opportunity to confront and cross-examine adverse witnesses

22          3.      The opportunity to present evidence in recipient's defense
            4.      The right to retain counsel

23          5.      An impartial decision-maker
            6.      A decision which is based solely on "the legal rules and evidence adduced at the hearing"

24          7.      A statement of the evidence relied on and the reasons for the decision.
        Goldberg, 397 U.S. at 267-71.

25

26  **ORD ON MTN**
    **TO DISMISS - 8**

1    review") into a single hearing, as long as that hearing takes place before the termination of benefits.

2    Id. at 267, fn. 14.

3          During arguments on the preliminary injunction motion, Defendant took the position that

4    "[n]othing in HUD's informal hearing regulations states, or even implies, that HUD intended to

5    incorporate both Goldberg's pre and post termination hearing requirements into its informal

6    procedures." (Def Memo in Opp. to Plaintiff's Mtn for Prelim Inj., p. 12.) The Court agrees that the

7    HUD regulations do not represent an attempt to embody the full panoply of due process rights

8    envisioned by the Supreme Court in Goldberg.

9          In its latest briefing, however, Defendant has changed its position. In arguing that "[t]he

10   informal hearing is 'a full and fair administrative review'" (Reply, p. 9) and "[t]he criteria that HUD

11   provides for fully meet[] the requirements of Goldberg v. Kelly," (Id., p. 7), SHA has announced a

12   new perspective on the extent to which the HUD regulations embody the holding in Goldberg.

13   Defendant also quotes the language of the commentary to HUD's regulations: "There is no need for a

14   posttermination hearing because the pretermination fully comports with due process requirements."

15   55 FR 28538, 28541.

16         Defendant fails to analyze Goldberg correctly.  A comprehensive reading of the opinion leads

17   inexorably to the conclusion that a welfare benefits termination procedure that only incorporates the

18   rights enumerated as necessary for a pre-termination "informal hearing" does not meet constitutional

19   muster.  The Court anticipates the government's response: What more is required?[3]   A review of the

20   administrative plan at issue in Goldberg – found at HEW Handbook of Public Assistance

21   Administration, Pt. IV, §§ 6200-6400 (February 1968) – reveals that the post-termination "fair

22

23   _____

24        [3]  A lecturing federal judge observed "Goldberg v. Kelly is the lodestar in this area, but it sheds an uncertain
     light.  After the usual litany that the required hearing 'need not take the form of a judicial or quasi-judicial trial,' Mr.
     Justice Brennan proceeded to demand *almost* all the elements of one."  Judge Henry J. Friendly,  "Some Kind of
25   Hearing," 123 U. Pa. L. Rev. 1267, 1299 (1975) (citations omitted)(emphasis supplied).

26   **ORD ON MTN**
     **TO DISMISS - 9**

hearing" alluded to by the Supreme Court contained the added elements of a "verbatim transcript . . . or official report containing the substance of what transpired at the hearing" as well as the right of the challenging recipient "to advance *any* arguments without undue interference."  HEW Handbook, § 6200(i)(5) and (l) (emphasis supplied).

The latter requirement – the right "to advance any arguments without undue interference" – lies at the heart of Plaintiff's complaint.  She argues that target recipients are not permitted to raise legal arguments at the informal hearing that might constitute a defense to the facts that SHA has found to require termination from Section 8 (e.g., that an ADA disability accommodation might conflict with and supersede a Section 8 requirement).  SHA's position is that the pre-termination informal hearing is solely intended to review the validity of the facts upon which the termination decision was based and determine whether the Section 8 regulations dictate termination on that basis.[4]  Admittedly, language in Goldberg suggests that the pre-termination hearing can be confined to just that scope,[5] but that inquiry alone cannot satisfy the due process requirements enunciated in that opinion.  Presumably, the Supreme Court was willing to countenance a hearing confined to "the lawfulness of the proposed termination" only because the post-termination full administrative proceeding would allow the recipient "to advance any argument without undue interference."[6]  The full due process requirements of Goldberg encompass everything contemplated by that Court in the pre- and post-termination hearings.

---

[4]  "[The HUD regulations] describe[] the formal requirements for hearing decisions, and confer[] no authority upon hearing officers to consider anything other than the lawfulness of the proposed termination."  Def. Mtn., p. 13.

[5]  "[T]he pre-termination hearing has one function only: to produce an initial determination fo the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits."  Goldberg, 397 U.S. at 267.

[6]  "Thus, a complete record and a comprehensive opinion, which would serve primarily to facilitate judicial review and to guide future decision, need not be provided at the pre-termination stage."  Id. (emphasis supplied)

**ORD ON MTN**
**TO DISMISS - 10**

1    Viewed in this context, Plaintiff's allegations concerning the lack of qualifications of the SHA

2    hearing officers assume more substance.  Plaintiff argues that the nature of the Section 8 termination

3    review requires a more sophisticated hearing officer than an SHA staff member versed only in

4    SHA/HUD regulations.  SHA's response to this argument can be summarized as: Since the regulations

5    don't require that the hearing officers be knowledgeable in any area other than Section 8 legislation, it

6    must mean that we are not required to permit arguments touching any other aspect of the law. (Def.

7    Mtn., p. 14.)   This logic hardly constitutes a substantive defense against a constitutional due process

8    argument.  The regulations specify the *minimum* requirements for the hearings officers, but if the

9    Supreme Court says that due process requires that the hearings include the presentation of all legal

10   arguments relevant to the recipient's defense, then Plaintiff's argument that the agencies are required

11   to provide officers capable of analyzing and ruling on those arguments may well prove capable of

12   supporting a claim for declaratory or injunctive relief.

13   Although Defendant now appears to take the position that Goldberg does not require it to

14   offer hearings with this broad a scope, it also argues that, if there is an underlying constitutional flaw

15   in the HUD/SHA regulations, then HUD is an "indispensable party" and this case should be dismissed

16   for Plaintiff's failure to join HUD.  Without commenting on the merits of that argument, it is not

17   properly raised in this motion.  Failure to join an indispensable party is properly considered under

18   FRCP 12(b)(7), and Defendant should bring that argument as a separate motion and permit the issue

19   to be fully briefed on both sides.

20   And, to the extent that Defendant's position is that it need only faithfully follow the HUD

21   regulations to be insulated from litigation, it may not seek shelter there.  The Court is far from

22   convinced that SHA is excused from meeting the constitutional requirements of Goldberg just because

23   HUD regulations may prove underinclusive.  Defendant cites no authority suggesting that a local

24   agency charged with administering a federal program is excused from meeting the requirements of the

25

26   **ORD ON MTN**
     **TO DISMISS - 11**

1  Constitution because its parent agency has failed to do so.  Further, language in the HUD regulations

2  suggests that these informal hearings should determine whether housing authority decisions "are in

3  accordance with *the law*, HUD regulations and PHA policies."  24 CFR 982.555(a)(1) (emphasis

4  supplied).  Presumably "the law" means all laws, including the ones that Plaintiff wishes to include in

5  her defense.

6  **Conclusion**

7    Although Plaintiff will not prevail on her request for a writ of prohibition, Defendant has failed

8  to argue convincingly that no set of circumstances under which Plaintiff could prevail on her quest for

9  a declaratory judgment or injunctive relief.  On that basis, the motion to dismiss is GRANTED as to

10  the writ of prohibition claim and DENIED as to Plaintiff's cause of action for declaratory and

11  injunctive relief.

12  .

13    The clerk is directed to provide copies of this order to all counsel of record.

14    Dated:  November 9, 2007

15

16  Marsha J. Pechman
    U.S. District Judge

17

18

19

20

21

22

23

24

25

26  **ORD ON MTN
    TO DISMISS - 12**